## SACO-LOWELL SHOPS v. CLINTON MILLS CO.

(Circuit Court of Appeals, First Circuit. December 29, 1921.)

No. 1506.

1. **Sales ⊜⇒22(4)—Return of offer marked accepted but with changed terms is rejection.**

   Where an offer to sell machinery was returned to the seller marked by the buyer as accepted, but containing material modifications of the terms interlined by the buyer, the offer was rejected, and no contract was consummated.

2. **Frauds, statute of ⊜⇒113(3)—Memorandum of sale omitting time of delivery which was an essential element held insufficient.**

   Where the seller of machinery submitted a written proposal, which called for delivery on a stated date, but the parties negotiated as to terms, until long after the stated date of delivery, and then, as the buyer claimed, orally agreed on the contract as stated in the proposal, except for a future date of delivery, and evidence showed the date of delivery was an essential element, the proposal of the seller was not a sufficient memorandum to comply with Acts Mass. 1908, c. 237, pt. 1, § 4, since it did not contain the essential element, so that the contract was partly written and partly oral.

3. **Frauds, statute of ⊜⇒82—Contract of sale of machinery of standard type required to be in writing by statute, though excepting goods "specially manufactured."**

   Though Acts Mass. 1908, c. 237, pt. 1, § 4, requiring written contracts of sale of goods, provides that it shall not apply to goods "specially manufactured" by the seller for the buyer, and not suitable for sale to others in the ordinary course of the seller's business, it applies to a sale of machinery of a standard type manufactured by the seller of less value to others than the buyer, and the contract must be in writing.

In Error to the District Court of the United States for the District of Massachusetts; Edgar Aldrich, Judge.

Action by the Clinton Mills Company against the Saco-Lowell Shops. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with directions to set aside the verdict.

Thomas Hunt and Rupert L. Mapplebeck, both of Boston, Mass. (Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., on the brief), for plaintiff in error.

Stuart C. Rand, of Boston, Mass. (John L. Hall, of Boston, Mass., and Thomas A. McKennell, of New York City, on the brief), for defendant in error.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. This is a writ of error from a judgment of the District Court of Massachusetts, in which the Clinton Mills Company was plaintiff and the Saco-Lowell Shops defendant, and for convenience they will be so designated herein.

The plaintiff was a corporation engaged in the manufacture of cotton cloth at Hoboken, N. J. Part of its product was used by another corporation known as the Ayvad Manufacturing Company in the manufacture of water wings, an article protected by a patent, and the balance was sold to others. Some time in the year 1913 Mr. H. A. Ayvad, who seems to have controlled both corporations, desiring to increase their business, partly upon information furnished him by the defendant, purchased a cotton mill plant at Emporia, Va., with the intention of moving there the machinery which he had been using at Hoboken and by the addition of new machinery forming a larger plant than that previously conducted at Hoboken.

Mr. Ayvad applied to the defendant to furnish additional machinery needed at the new plant and to furnish specifications for the proper equipment of a 5,000-spindle cotton mill which the plaintiff proposed to establish, using, as far as the same was suitable, the old machinery which was in the plaintiff's plant at Hoboken.

On October 14, 1914, the defendant submitted to H. A. Ayvad its written proposal for furnishing machinery covered in a schedule annexed thereto. This machinery was of the standard type built by the defendant at its shops in Massachusetts and Maine and was to be delivered before January 1, 1915.

This proposal was retained by Mr. Ayvad until the first part of January, 1915, when it was returned to the defendant with certain changes in the specifications and in the time of the first payment, but without changing the time of delivery. These changes were made by Mr. Ayvad and his superintendent by interlineations and notations upon the printed and typewritten sheets constituting the original proposal, which was in duplicate. One of the parts was retained by the plaintiff, and the other sent to the defendant. Upon both parts, before the return of one of them to the defendant, the plaintiff had entered the following indorsement: "Accepted: Clinton Mills Company, H. A. Ayvad, Pres."

January 6, 1915, the defendant wrote the plaintiff in regard to the interlineations and notations which the latter had made upon the original proposal and discussed them in detail, pointing out why it wished to adhere to the original specifications.

[1] Although the plaintiff had written its acceptance upon the original proposal, yet the return of it with the changes which it had made was a rejection by it of the defendant's offer. Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822; Minneapolis, etc., Ry. v. Columbus Rolling Mill, 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376; Denver v. New York Trust Co., 229 U. S. 123, 140, 33 Sup. Ct. 657, 57 L. Ed. 1101.

The defendant did not withdraw its offer, but by its letter of January 6, 1915, renewed it; and, as the time of delivery fixed therein had

become impossible, it called the attention of the plaintiff to the fact that a new time of delivery must be agreed upon and urged the plaintiff to advise in regard to it.

On January 20, 1915, not having received a reply to its letter of January 6th, the defendant again wrote, asking for a reply at an early date, and stating that it was unable to proceed with the building of the roving and spinning machinery until all the details covered by its letter of January 6th were closed up.

On January 25, 1915, the plaintiff wrote the defendant, stating that because of other work its Mr. Ayvad and its superintendent, Mr. Fadden, had not had time to consider the matters discussed in the defendant's letter of January 6th, but promised attention within a week and that information needed should be sent.

March 15, 1915, the defendant wrote the plaintiff:

"We would be very glad indeed to hear from you as to how matters are progressing and if we may have your final approval of the specifications and date of delivery of the machinery."

On May 6, 1915, the defendant again wrote Mr. Ayvad, stating that it must know something definite with regard to the plaintiff's requirements for delivery in order to protect it upon the same, as it was rapidly filling up with orders for deliveries during the balance of the year.

To this letter the plaintiff replied, stating that it had not been able to arrive at a definite decision in regard to the machinery; that its Mr. Ayvad and Mr. Fadden went over the proposal that had been submitted and found that the machinery designated in it would not match its present machinery, and that it was very particular not to have various kinds of machinery in its mills; that it would therefore be necessary to go over the whole situation once more and have this point clearly understood, stating that Mr. Ayvad would be at Hoboken about the 1st of June and would like to have a talk with Mr. Havey, selling agent of the defendant company, before going too far.

To this letter the defendant replied that it would be glad to go over the matter again when Mr. Ayvad came to Hoboken.

Up to this point it is apparent that no contract had been made. The defendant had submitted a proposal which had been changed by the plaintiff in material features. The defendant had not agreed to these changes, and no time of delivery had been agreed upon in place of that which had become impossible. The whole contract, involving specifications, times of payment, and delivery, was allowed to stand open awaiting an interview between the parties.

An interview was had about the 1st of June, 1915, between Mr. Ayvad and Mr. Havey, selling agent for the defendant; but the parties disagree as to what actually took place. Mr. Ayvad testified that, after the suggested changes in the original proposal had been gone over by Mr. Havey and explained to him, he finally agreed to waive the changes which he had asked for, and that the machinery might be furnished in accordance with the proposal submitted by the defendant; that it was agreed that the delivery should be made in the fall

and that the first payment of $5,000 should be made one year after the average date of shipment.

Mr. Havey testified that at this interview Mr. Ayvad told him that he could not decide upon the matters covered by the notations which had been made by him upon the original proposal, and discussed by the defendant in its letter of January 6th, until he had conferred with his superintendent, Mr. Fadden, and therefore that the whole matter was left unsettled.

Whatever occurred at this meeting in June depended for its proof entirely upon oral testimony and was not shown by any written memorandum or correspondence.

Nothing further occurred between the parties until October 2, 1915, when the plaintiff wrote the defendant asking if it would not be possible to deliver the machinery which it had ordered last year and erect the same, together with the old machinery which it had transported from Hoboken to Emporia, and have its plant at Emporia running about the middle of November; that the time was very important, as it had been offered a contract under which deliveries would have to be made commencing December 1, 1915; and that its acceptance was conditioned upon the defendant making its delivery as requested. It asked that the defendant reply by telegram, which it did upon October 4th, stating that it was impossible to make delivery before the last of December; and upon the same day it wrote the plaintiff confirming its telegram and stated that the time of delivery stated in it was the very best it could do if it had the plaintiff's instructions to go ahead at once. It also stated:

"We would like very much to build this machinery now and hope you can arrange to let us go ahead."

On February 21, 1916, the plaintiff wrote the defendant that its Mr. Ayvad had just returned from the South and was at the Hoboken office and would like to go over the mill proposition and give instructions when and how to ship machinery to Emporia, as the buildings there were completed and ready to receive the same, and asking that the defendant forward by return mail a copy of the latest layout plans, also specifications for belting, motors, etc., so that, while Mr. Ayvad was in Hoboken he could have this matter disposed of, and also inquiring when the whole order could be shipped.

To this the defendant replied February 23, 1916, stating in substance that it noted Mr. Ayvad wished to reopen the mill proposition; that they had assumed that the matter had lapsed and had not been carrying any memo of the same for some time past; that they would be glad to quote present prices and terms; that the question of delivery was a very serious one, as they were completely filled up for the balance of the year, but might be able to move some of the machinery in December; that the present cost materials and labor had caused an advance in machinery of 25 or 30 per cent., and it would be impossible to close any final contract at the prices mentioned in 1914. At a meeting between the parties after the date of this letter the defendant refused to furnish machinery according to the original proposal.

The plaintiff's declaration contains six counts, in each of which it alleges a contract of sale of machinery by the defendant to it, which, after protracted negotiations, was closed in June, 1915, when an offer of the defendant was accepted and the time of delivery agreed upon, which was the fall of 1915; that, at large expense and with the knowledge of the defendant, it had moved machinery from Hoboken, N. J., to Emporia, Va., for use in connection with the machinery which was to be furnished by the defendant; that by failure of the defendant to furnish the machinery which was necessary to be used in equipping its mill at Emporia it lost the use of said mill and the resulting profits which might have been made from its operation; that it was unable to obtain other machinery in place of that to be furnished by the defendant.

The defendant in its answer admitted that in the year 1914 it attempted to enter into an agreement with the plaintiff, but claimed that it failed to do so, and that there was never any contract consummated between the parties. It also alleged that there was no memorandum in writing of the sale alleged by the plaintiff sufficient to satisfy section 4 of part 1 of chapter 237 of the Acts of the General Court of the Commonwealth of Massachusetts for the year 1908, which is the statute of frauds, covering the sale of goods and choses in action of the value of $500 or more and containing the usual provision in regard to a memorandum of a sale.

The jury accepted the plaintiff's version of what occurred at the interview in June, and the court instructed them that the contract between the parties could be shown by the written proposal which had been submitted by the defendant, supplemented by oral testimony of the agreement in June, 1915; that the contract was partly written and partly oral, and left the determination of what the contract really was to them.

There are 101 assignments of error; but we find it necessary to consider only those which embody the refusal of the court to give the instructions requested by the defendant upon the Massachusetts statute, which appear in the following assignments:

"The court erred in refusing to rule that a memorandum sufficient to satisfy the requirements of section 4 of part 1 of chapter 237 of the Acts of the General Court of the Commonwealth of Massachusetts for the year 1908 must contain the parties, the price, the property to which the contract relates, and any material terms agreed upon, such as the warranty terms of credit, security, or time of delivery."

"The court erred in refusing to rule that there is no evidence of a memorandum sufficient to satisfy the requirements of the statute above referred to."

The same question was raised by assignments of error directed to the following instructions of the court, to which the defendant excepted:

"So far as it is a question of fact, I find, and so far as it is a question of law, I rule, that this proposal signed by the Saco-Lowell Machine Shops in October, 1914, in connection with the correspondence which followed amounts to a 'note or memorandum in writing signed by the party to be charged,' sufficient to take it out of the provisions of the statute of frauds and to put the transaction in a situation for you to find whether or not, accepting this as a basis on which to apply the undertaking of the parties, whether or not it

was completed at the interview in June in Hoboken, completed by the parties getting together and saying, 'These details which we have talked about, which we have discussed in writing and orally, are accepted on the part of Mr. Ayvad as the lines on which the Massachusetts corporation is to go forward and perfect and deliver the machinery.' If you find that it was accepted, then it is a binding contract."

[2] Under the plaintiff's version of what took place at the interview in June, 1915, and upon which the verdict of the jury must have been based, the contract of sale upon which the plaintiff sought to recover was partly written and partly oral.

It is elementary that the memorandum in writing, to satisfy the statute of frauds, must contain all the essential elements of the contract, and no substantive element can be supplied by oral testimony.

In the contract upon which the plaintiff has declared, the time of delivery was an essential element, as conclusively appears from the correspondence. There was no memorandum stating the time the delivery should take place, which the jury must have found was provided for in the oral contract of June, 1915.

In Rosenfeld v. Standard Bottling & Extracts Co., 232 Mass. 239, it is said at page 245, 122 N. E. 299, 300:

"It is contended, however, that the case at bar, as was said by Mr. Justice Hoar in Whittier v. Dana, 10 Allen, 326, at page 327, 'is governed by the decisions of this court in Cummings v. Arnold, 3 Met. 486, and Stearns v. Hall, 9 Cush. 31, in both of which the doctrine was recognized and affirmed that, where a written contract within the statute of frauds has been varied by a subsequent parol agreement, affecting the mode of performance only, the action can be maintained only upon the written contract, because to allow a party to sue partly on a written and partly on an oral agreement would be in direct contravention of the statute.'"

The present case is not within Cummings v. Arnold and Stearns v. Hall, supra, and Hastings v. Lovejoy, 140 Mass. 261, 2 N. E. 776, 54 Am. Rep. 462, because it does not present the question considered and decided by them of the enlargement of the time of performance of a written contract within the statute of frauds by a subsequent oral agreement; but it presents the question of whether a substantive part of a contract never reduced to writing, but, if ever agreed upon, agreed upon orally, may be omitted from the memorandum.

The contract here, if there was one, was not made until June, 1915, and an essential element in it was the time of delivery which was then, if ever, agreed upon, but which does not appear as a substitute for the date that it contained when submitted by the defendant and which had become impossible; nor does it appear in any of the correspondence between the parties. If it was agreed upon orally there is no memorandum in writing which contains it.

The plaintiff in all the counts of its declaration has declared upon a contract of sale of machinery to be delivered in the fall of 1915; but the only evidence to support this allegation was the testimony of the plaintiff in regard to the oral agreement that was made in June, 1915.

Under the instructions of the court the jury must have found that the contract was partly written and partly oral, the oral part being that which fixed the date of delivery, and for a breach or failure to deliver in accordance with the oral contract damages must have been

assessed, because, upon this branch of the case, they received the following instructions:

"But if you should find that this proposal which was signed by both parties, some suggestion of changes, and the correspondence which followed, carried the transaction along with a view of perfecting certain details, and that those details were finally agreed upon in June and accepted by Mr. Ayvad with instructions to go ahead, * * * then your verdict would be for the plaintiff, because there would be a contract, although partly in writing, the writing being the basis of the June summation if there was a summation, the relations being partly established by writing and partly by parol, it would be a contract which would be enforceable and a contract which would create rights on which Mr. Ayvad would be entitled to rely."

[3] It was suggested in argument that the machinery specified in the defendant's proposal was to be manufactured by it especially for the plaintiff, and was not suitable for sale to others in the ordinary course of the defendant's business, and therefore the Massachusetts statute, by its express provision, would not apply.

There was some evidence that the machinery specified would be of less value to other than to the plaintiff, but the testimony discloses that it was of a standard type manufactured by the defendant, and that it was not to be built of any special type for the plaintiff.

The plaintiff in its declaration declared upon a sale of machinery, and not upon a contract for its manufacture. The court in its instructions treated the contract as one of sale. No exceptions were taken to these instructions, and no error assigned which raises this question.

The time of delivery, an essential part of the contract, having been agreed upon orally, and not evidenced by the written proposal or any of the correspondence or by any written memorandum, there was no sufficient memorandum to satisfy the Massachusetts statute. The instructions requested by the defendant upon this branch of the case should have been given, and there was error in the instruction which was given.

The judgment of the District Court is reversed, with costs to the plaintiff in error in this court, and the case is remanded to that court, with directions to set aside the verdict and for further proceedings not inconsistent with this opinion.