### CLINTON MILLS CO. v. SACO–LOWELL SHOPS.*

(Circuit Court of Appeals, First Circuit. January 23, 1925.)

#### No. 1768.

1. **Frauds, statute of** ☞113(3)—**Contract of sale is invalid if agreed time of delivery is omitted from written memorandum.**

Where the time of delivery is agreed upon, but is not included in the written memorandum, the contract is within the statute, and not enforceable.

2. **Trial** ☞296(2)—**Instructions as to construction of statute held correct, in view of other instructions.**

Under provision of Massachusetts statute of frauds (St. Mass. 1908, c. 237, pt. 1, § 4), that if the goods are to be manufactured especially for the buyer, and are not suitable for sale to others in the ordinary course of business, such section shall not apply, instructions that, to exclude the exception, it was not necessary that a single buyer could be found for the whole lot, but was sufficient if the whole lot could be disposed of by making minor changes and adjustments therein, *held* not erroneous in connection with other instructions.

In Error to District Court of the United States for the District of Massachusetts; James M. Morton, Judge.

Action at law by the Clinton Mills Company against the Saco-Lowell Shops. Judgment for defendant, and plaintiff brings error. Affirmed.

For prior opinion, see 277 F. 349.

Stuart C. Rand, of Boston, Mass. (Thomas A. McKennell, of New York City, and John L. Hall and Lowell S. Nicholson, both of Boston, Mass., on the brief), for plaintiff in error.

Dunbar F. Carpenter, of Boston, Mass. (William T. Snow and Gaston, Snow, Saltonstall & Hunt, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

*Rehearing denied March 20, 1925.

JOHNSON, Circuit Judge. In this action the plaintiff sought to recover for breach of a contract for the manufacture and sale of cotton mill machinery. The case has been before us once before, and our opinion appears in 277 F. 349. We then held that as, according to the plaintiff's contention, the contract was not consummated until June 5, 1915, and that as proof of one essential element of the contract, the time of delivery, depended entirely upon oral testimony, there was no memorandum in writing sufficient to satisfy the requirements of section 4 of part 1 of chapter 237 of the Acts of the General Court for the Commonwealth of Massachusetts for the year 1908.

The plaintiff then contended that the machinery for which it had contracted fell under the exception to this statute, which provides that:

"If the goods are to be manufactured by the seller especially for the buyer and are not suitable for sale to others in the ordinary course of the seller's business this section shall not apply."

Before the second trial the plaintiff amended its declaration, so that, as amended, it contains a statement that the machinery was manufactured especially for the plaintiff, and that it was not suitable for sale to others in the ordinary course of the defendant's business.

By the amendments the declaration was made to contain allegations of an oral contract for the manufacture of the machinery on October 9, 1914, and a written contract, either in January or in June, 1915. The testimony in regard to the negotiations between the parties in the record now presented is substantially the same as that which we had to consider when the case was here before, except that it contains certain correspondence with the defendant relative to the purchase of cotton mill machinery for a contemplated addition to the plaintiff's mill at Hoboken, N. J., which was not in the other record. It is evident that this correspondence related to machinery for an addition to the plaintiff's mill at Hoboken, N. J., or some mill to be purchased or erected by him, other than the one for which it is alleged it was finally purchased.

The plaintiff is a corporation engaged in the manufacture of cotton cloth, most of which is used by another corporation known as the Ayvad Manufacturing Company in the manufacture of water wings, for which H. A. Ayvad held a patent, and he seems to have owned a controlling interest in both

corporations. The defendant is engaged in the manufacture of mill machinery.

The plaintiff purchased what appears to have been an unsuccessful cotton mill plant at Emporia, Va., with the intention of moving there some of the machinery which it had been using at Hoboken, and, by adding other machinery, creating a 5,000 spindle cotton mill. It applied to the defendant to furnish a schedule of equipment for such a mill.

In May, 1914, the defendant submitted to the plaintiff a schedule of machinery, which, with the machinery in the plaintiff's mill at Hoboken, was, in its opinion as an expert upon cotton mill equipment, necessary to make the mill at Emporia of the manufacturing capacity which the plaintiff desired.

On October 9, 1914, H. A. Ayvad met J. F. Havey, the selling agent of the defendant, at Hoboken, and went over the schedule which had been furnished, and, it is claimed by the plaintiff, agreed upon the sum of $28,000 as the price for which the machinery was to be delivered to it by the defendant. The price submitted by the defendant was $30,000.

It is evident from Mr. Ayvad's testimony that the contract was not completed at that time for he testified:

"Now," I said, "you go and tell your house, if they want to accept $28,000, I am perfectly willing to let you have contract. Now, if they do not accept it," I told him, "don't write back and forwards; cut it right out."

On October 14, 1914, the defendant submitted a proposal for furnishing the machinery in the schedule which it annexed for $28,000, delivery to be made before January 1, 1915, and payment to be made, $5,000 January 1, 1916, and the balance at the rate of $1,000 per month.

To this Mr. Ayvad replied, October 15, 1914, stating that Mr. Fadden, his superintendent, was at Emporia, and that he would have to see him and talk the whole matter over with him when he went down there, which would be in November, at which time he would send definite information.

On October 20, 1914, the defendant wrote again, stating that it had not yet received "the signed contract covering your order for machinery, and the writer would much appreciate if you would sign and return same to us, so that this can be turned over to our treasurer."

To this letter the plaintiff replied on October 21, 1914, stating that it would be nec-essary for him to see Mr. Fadden, to whom he had sent the specifications, and that the points the writer wished to speak with him about had so many minute details it would be almost impracticable to explain them by mail, but stating:

"As soon as I go down and have taken up the matter with him, I will confirm the order, sign it, and send it to you."

December 9, 1914, the defendant again wrote the plaintiff, stating that it would like to get the machinery for the addition to the plaintiff's mill on its shop books before the end of the year, and that it would be to the mutual advantage of the parties "if we could get this all finally settled up, and arrive at a definite date when you could take shipment."

To this the plaintiff replied that he should go to Emporia about December 20th, and could then give the information asked for, and stating:

"Our Mr. Fadden has been getting the machinery placed for the water wings manufacturing, so that when I get down there we can start at once at the placing of the cotton machinery."

Mr. Ayvad testified that early in January, 1915, he met Mr. Havey, the defendant's selling agent, at Hoboken; he then had the defendant's proposal, with schedules of specifications annexed, which had been sent him in duplicate; that at this conference certain interlineations and notations were made in the specifications annexed to the defendant's proposal, and that, as the time for delivery stated in the proposal had passed, it was then agreed that delivery should be made in the fall of the year 1915; and that, after these changes were made, in the presence of Mr. Havey, he signed the contract. He further testified that Mr. Havey took away with him one of the copies of the specifications and that he retained the other. Mr. Havey denied that he met Mr. Ayvad in January, or saw him after their meeting in October, until some time after January 6, 1915. On that date the defendant wrote the plaintiff, calling attention to all the interlineations and notations that had been made upon the original proposal, acknowledging receipt of the signed contracts covering machinery "for the addition to your mill," and stating:

"The various notations you have made on same have had our attention, and we will refer to same in detail, so there may be no misunderstanding in the matter."

These interlineations and notations were discussed at length in the letter. The interlineations which had been made proposed certain changes in the specifications, and after discussing them the letter closed with this request:

"In order that there may be no misunderstanding with reference to these specifications, we shall be glad if you would advise us if it is agreeable to you to have us proceed with the order, using our regular width frame, regular type of roll stands, regular type of Rhoades-Chandler separators, regular type of builder drive, and our improved roving machinery, as built at Biddeford. You will recall that, when this order was placed, the writer discussed this matter with Mr. Ayvad, and it was decided at that time that our more modern roving and spinning machinery, as now built at Biddeford, was to be furnished on this order. You have not mentioned in the contract just what delivery you wish, and we should be glad if you would advise us fully on this point."

This letter was signed, "Saco-Lowell Shops, J. F. Havey." Mr. Havey was the selling agent, who, Mr. Ayvad testified, had only a few days before the date of this letter been in consultation with him at Hoboken in regard to the changes to be made in the specifications, and which was denied by Mr. Havey.

Not having received any reply to this letter, the defendant again wrote the plaintiff on January 20, 1915, stating:

"We are unable, of course, to proceed with the building of the roving and spinning machinery until we have all these details closed up."

January 25, 1915, Mr. Ayvad, for the plaintiff, replied, stating that he and Mr. Fadden were working hard to get the mill started at Emporia, and did not have time to go over the suggestions made in the letter of the defendant, but promising to send information soon.

On March 15, 1915, the defendant sent to the plaintiff its spinning frame catalogue, for which the plaintiff had asked, and called its attention to the bevel gear drive described therein, which it stated it considered superior to the chain drive, which was one of the changes the plaintiff had indicated by its interlineation should be made in the schedule which had been submitted.

In this letter defendant stated:

"We would be very glad indeed to hear from you as to how matters are progressing and if we may have your final approval of the specifications and date of delivery of the machinery."

There were no further negotiations or correspondence between the parties until May 6, 1915, when the defendant again wrote the plaintiff, stating that they would appreciate it "if you would write us advising us the status of your order for machinery. We are rapidly filling up for deliveries during the balance of the year, and must know something definite with regard to your requirements for delivery in order to protect you on same."

To this letter the plaintiff replied by letter dated May 6th (but which was sent two or three days later than this), stating in substance: Our Mr. Fadden and Mr. Ayvad went over your proposal and found that the machinery you proposed to build for us is not going to match our present machinery, that they were very particular not to have various kinds of machinery in their mill, and that it looked as if, when their machinery was installed, they would have two kinds. They also stated:

"Therefore it will be necessary to have gone over the whole situation once more, and have this point clearly understood. Ayvad will be up to Hoboken the 1st of June, and would like to have a talk with Mr. Havey again before going too far."

To this letter the defendant replied, through Mr. Havey, on May 10, 1915, discussing at some length the kind of machinery which had been originally specified, and stating that the writer would be glad to go over the specifications again.

There was a meeting between Mr. Ayvad and Mr. Havey in June at Hoboken, when, Mr. Ayvad testified, he withdrew the request for the changes in the original specifications which he had asked for, and agreed that the machinery might be made according to the original specifications submitted by the plaintiff; that they then agreed that all the machinery should be delivered in the fall of 1915.

There was no further correspondence between the parties until October 2, 1915, when the plaintiff wrote the defendant, asking it to telegraph at once if it would be possible to ship to Emporia the textile machinery ordered last year and erect the same, so as to have the plant in running order in six weeks; that time was important; that the plaintiff had a very large order on hand; and that its acceptance or refusal depended on the defendant's reply.

To this letter the defendant replied by

telegram on October 4, 1915, stating that it was impossible to make delivery before the last of December, and in a letter of the same date states:

"We would like very much to build this machinery now, and hope you can arrange to let us go ahead."

There was no further correspondence until February 21, 1916, when the plaintiff wrote the defendant that Mr. Ayvad had just returned from the South; that he would like to go over the mill proposition, and give instructions of when and how to ship the machinery to Emporia.

To this the defendant replied February 23, 1916, stating:

"We had assumed here that this matter had lapsed and have not been carrying any memo for same for some time past;" that the present cost of raw materials and the advance in the cost of labor would increase the cost of machinery 20 or 30 per cent. over the price talked about in March, 1914; and that it would now be impossible to close the final contract at the price mentioned then.

Upon special questions submitted to the jury by the court there were special findings:

First. That there was a completed contract between the parties for the sale and purchase of this machinery, which had been broken by the defendant.

Second. That the machinery was suitable for sale to others in the ordinary course of the Saco-Lowell Shops' business.

And, as instructed by the court, the jury found for the defendant.

The jury have not by their findings determined when the contract was completed between the parties. The plaintiff in its declaration has advanced three theories as to when the negotiations between the parties finally resulted in a contract, and has alleged that there was an oral contract in October, or a written contract in January or June, 1915.

If there was an oral contract in October, it was within the statute of frauds, and no action could be maintained upon it, because the jury have further found that the goods were suitable for sale to others in the ordinary course of the seller's business, and therefore not covered by the exception.

It was contended, however, that the proposal submitted by the defendants on October 14, 1914, in its original form, before any interlineations or notations were made upon it, constituted a memorandum in writing sufficient to take the contract out of the statute, and it is assigned as error that the court refused to give an instruction to this effect. There was no evidence upon which the jury could have found that the contract was agreed to before January 2, 1915, if all the plaintiff's testimony is accepted as true.

The plaintiff had had this proposal from early in October until the first part of January, and then, either in the presence of Mr. Havey, as Mr. Ayvad testified, or when he was not present, it had made changes in the proposals by the interlineations and notations which were made upon it, thus rejecting the proposal which had been made by the plaintiff in October, as we held in our former opinion.

While Mr. Ayvad testified that he wrote the words, "Accepted October 9, 1914," upon some schedule of specifications which had been furnished him by the defendant, he testified that this was not done by him until in January, 1915, and it appears from the record that the schedule upon which he made this entry was one sent him in March, 1914, upon which the entry appears in pencil, which is evidently some tentative proposed lay-out of machinery for the plaintiff's mill. There was no error in the refusal of the presiding judge to give this ruling.

Whether the contract was consummated in January or in June, 1915, an important element was not included in the memorandum, viz. the time of delivery. The court was requested to rule that, where no time of delivery was specified, the law would imply that a reasonable time was intended; but the plaintiff testified that the time of delivery agreed upon in January was the fall of 1915, and that the same agreement as to delivery was made in June, when he met Mr. Havey and had a final conference about the specifications.

[1] A memorandum in writing must contain all the essential elements of the contract, and, if the time of delivery agreed upon was not included in the memorandum, the contract is within the statute, provided the exception does not apply. The jury by its verdict has found that the machinery was suitable for sale to others in the ordinary course of the defendant's business, and we held in our former opinion, and now hold, that where the time of delivery has been agreed upon, but is not included in the written memorandum, the contract is within the statute and no action can be maintained. There was no error in the refusal of the court to instruct the jury that, where the time of delivery was agreed upon, the law

would imply that the delivery was to be made within a reasonable time, for such an instruction had no application to the contract made by the plaintiff, according to the testimony of its only witness in regard to the terms of the contract. The greater part of the record is made up of the testimony of witnesses in regard to the character of the machinery and whether it was suitable for sale to others in the ordinary course of the defendant's business.

[2] There are several assignments of error, in which the court's instruction to the jury with reference to this exception to the statute of frauds is assigned as error. They relate largely to whether or not it was necessary that the entire lot of machinery as a whole, in the condition in which it was to be manufactured, was suitable for sale. Upon this the court instructed the jury:

"It is not necessary that a single buyer should be found, who would take the whole lot. It is sufficient if the whole lot could be disposed of in an ordinary and practical manner among different buyers."

We think there was no error in this instruction, taken in connection with the following instruction, which was given:

"In other words, if this machinery had been left on the Saco Lowell Shops' hands, could they as a reasonable matter have disposed of it in a reasonable way, in the ordinary course of their business? Now, if they could, you are to answer that question 'Yes.'"

What we have said of this instruction, which is assigned as error, applies also to the other instructions, which were given as to the changes which might be made in the machinery, which were that, if a customer did not want it exactly as it stood, "would it be possible by making changes to sell it, and still sell it at a reasonable profit, as the business was conducted, and at the price which was customarily charged, or about the price which was customarily charged for that machinery," and, in substance, if the customer did not like any parts of the machinery, the jury might take into consideration whether minor changes and adjustments might be made at small expense to suit the customer. This instruction, taken with that

which was given and quoted above, and with the further instruction that the jury were to deal with the question "in a purely practical and reasonable way, on sound business lines," was correct; it left to the determination of the jury a question with which they were peculiarly well fitted to deal in the light of the testimony, and we find no error in the instructions that were given or those which were refused in regard to it.

It is also assigned as error, in several forms, that the court by its instructions limited the jury to finding that the contract was actually consummated in June, 1915. While in several parts of the charge the court did intimate that in its opinion the contract was not finally concluded until that time, he nevertheless told the jury that "wherever, in dealing with cases to you, I express an opinion about the facts, as I did here and there as I went through the correspondence, saying that up to this time apparently there was no contract in existence, that is merely my expression of opinion about a fact. It is your responsibility to get the facts right. You are always at liberty to disregard whatever a judge says to you upon the facts of the case, and it is your sworn duty to disregard what he says about the facts, unless his statements accord with your own views."

We have studied the record carefully, and, as already stated, can find no evidence which would sustain the verdict of the jury that the contract was made earlier than January, 1915, and that, if there was an oral contract in October, it was within the statute of frauds. Whether the contract was finally consummated in January or in June, it would be within the statute, because of failure to include an essential element, the time of delivery.

There are several errors assigned as to the admission and rejection of testimony in regard to the character of the machinery as bearing upon the question of whether it was suitable for sale in the ordinary course of the defendant's business; but they are without merit.

The judgment of the District Court is affirmed, with costs to the defendant in error in this court.